IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF OHIO
EASTERN DIVISION

GEORGE A. CASTOR, JR.,

      Petitioner,

                              Case No. 2:16-cv-0050
      v.                         JUDGE MICHAEL H. WATSON
                              Magistrate Judge King

WARDEN, ROSS
CORRECTIONAL INSTITUTION,

      Respondent.

## REPORT AND RECOMMENDATION

Petitioner, a state prisoner, brings the instant petition for a writ of habeas corpus pursuant to 28 U.S.C. § 2254. This matter is before the Court on the *Petition* (ECF No. 3), Respondent's *Return of Writ* (ECF No. 8), Petitioner's *Traverse* (ECF No. 11), and the exhibits of the parties. For the reasons that follow, the Magistrate Judge **RECOMMENDS** that this action be **DISMISSED**.

### Facts and Procedural History

The Ohio Fifth District Court of Appeals summarized the facts and procedural history of the case as follows:

> On October 29, 2013, the Delaware County Grand Jury indicted appellant, George Castor, on forty-two counts involving burglaries (R.C. 2911.12), possession of criminal tools (R.C. 2923.24), theft (R.C. 2913.02), and receiving stolen property (R.C. 2913.51). Thirty-one of the counts occurred in Franklin County and the remaining eleven occurred in Delaware County.
>
> A jury trial commenced on November 12, 2013. At the conclusion of the state's case-in-chief, the prosecutor dismissed five counts and amended others. The jury found appellant not guilty of one of the burglary counts, and guilty of thirty-six counts, to wit: twelve counts of burglary in the second degree, eight counts of burglary in the third degree, one count of attempting to commit burglary in the

fourth degree, two counts of possessing criminal tools in the fifth degree, one count of theft in the fourth degree, and twelve counts of receiving stolen property, six in the fifth degree and six misdemeanors in the first degree. By amended judgment entry filed December 20, 2013, the trial court merged some of the counts and sentenced appellant to an aggregate term of thirty-four years in prison.

Appellant filed an appeal and this matter is now before this court for consideration. Assignments of error are as follows:

I

"R.C. 2901.12(H) VIOLATES THE OHIO CONSTITUTION, ARTICLE I, SECTION 10, AND THE SIXTH AMENDMENT TO THE U.S. CONSTITUTION BY ALLOWING FOR A JURY TRIAL IN A COUNTY OTHER THAN THAT IN WHICH THE OFFENSE WAS COMMITTED."

II

"APPELLANT WAS DEPRIVED OF HIS RIGHTS TO THE EFFECTIVE ASSISTANCE OF COUNSEL UNDER THE SIXTH AND FOURTEENTH AMENDMENTS TO THE UNITED STATES CONSTITUTION AND THE OHIO CONSTITUTION, ARTICLE I, SECTION 10, BECAUSE COUNSEL FAILED TO ARGUE THAT THE VENUE STATUTE WAS UNCONSTITUTIONAL."

III

"VENUE WAS NOT PROPER IN DELAWARE COUNTY FOR COUNTS ONE THROUGH THIRTY–ONE BECAUSE THE EVIDENCE FAILED TO SHOW A UNIFYING COURSE OF CRIMINAL CONDUCT AS REQUIRED BY R.C. 2901.12(H)."

IV

"APPELLANT'S RIGHTS TO DUE PROCESS UNDER THE STATE AND FEDERAL CONSTITUTIONS WERE VIOLATED BY THE USE OF AN EYEWITNESS IDENTIFICATION DERIVED FROM AN IMPERMISSIBLY SUGGESTIVE PHOTOGRAPHIC LINEUP."

*State v. Castor*, No. 14 CAA 01 0004, 2014 WL 6648987, at *1 (Ohio App. 5th Dist. Nov. 24, 2014). On November 24, 2014, the appellate court affirmed the judgment of the trial court. *Id.* On April 29, 2015, the Ohio Supreme Court declined to accept jurisdiction of the appeal. *State v. Castor,* 142 Ohio St.3d 1452 (2015).

On February 18, 2015, Petitioner filed a motion for extension of time to file an application to reopen the appeal pursuant to Ohio Appellate Rule 26(B). *Motion for Extension of Time to File under APP.R. 26(B)* (ECF No. 8-1, PageID# 271). On March 25, 2015, the appellate court granted that motion, but gave Petitioner until March 24, 2015, to file the Rule 26(B) application. *Judgment Entry* (PageID# 272). On April 10, 2015, Petitioner filed a delayed Rule 26(B) application. *Appellant's Delayed Application for Reopening* (PageID# 273). On April 28, 2015, the appellate court denied the motion because it was untimely and because the court lacked jurisdiction to entertain the application due to Petitioner's pending appeal in the Ohio Supreme Court. *Judgment Entry* (PageID# 293). On May 4, 2015, Petitioner filed a motion for a stay. *Motion for Stay of Proceedings* (PageID# 294). On June 15, 2015, the appellate court denied that motion. *Judgment Entry* (PageID# 306). Petitioner filed a timely appeal from that decision to the Ohio Supreme Court which, on August 26, 2015, declined to accept jurisdiction of the appeal. *State v. Castor*, 143 Ohio St.3d 1447 (2015).

Petitioner filed this action on January 19, 2016. He alleges that he is being held in violation of his right to proper venue (claim one); that he was denied the effective assistance of trial counsel because his attorney failed to challenge the constitutionality of O.R.C. § 2901.12(H) (claim two); that the State failed to present sufficient evidence to establish a unifying course of conduct for trying Counts One through Thirty-One in Delaware, Ohio (claim three); that he was convicted as a result of an impermissibly suggestive photo array (claim four); that he was denied

the effective assistance of appellate counsel (claim five); that the evidence is constitutionally insufficient to sustain his convictions (claim six); that the trial court improperly imposed sentences of "mandatory time" (claim seven); that he was denied his right to a fair and impartial jury because one of the jurors kept falling asleep during trial (claim eight); and that he was denied the effective assistance of trial counsel because his attorney failed to request a mistrial or the seating of an alternate juror based on a juror falling asleep during trial (claim nine). Respondent contends that Petitioner's claims are procedurally defaulted or without merit.

### Procedural Default

Congress has provided that state prisoners who are in custody in violation of the Constitution or laws or treaties of the United States may apply to the federal courts for a writ of habeas corpus. 28 U.S.C. § 2254(a). In recognition of the equal obligation of the state courts to protect the constitutional rights of criminal defendants, however, and in order to prevent needless friction between the state and federal courts, a state criminal defendant with federal constitutional claims must first present those claims to the state courts for consideration. 28 U.S.C. § 2254(b), (c). If he fails to do so, but still has an avenue open to him by which he may present his claims, then his petition is subject to dismissal for failure to exhaust state remedies. *Id.; Anderson v. Harless*, 459 U.S. 4, 6, 103 (1982) *(per curiam)* (citing *Picard v. Connor*, 404 U.S. 270, 275–78 (1971)). Where a petitioner has failed to exhaust his claims but would find those claims barred if later presented to the state courts, "there is a procedural default for purposes of federal habeas. . . ." *Coleman v. Thompson*, 501 U.S. 722, 735 n. 1 (1991).

The term "procedural default" has come to describe the situation where a person convicted of a crime in a state court fails (for whatever reason) to present a particular claim to the highest court of the State so that the State has a fair chance to correct any errors made in the

course of the trial or the appeal before a federal court intervenes in the state criminal process. This "requires the petitioner to present 'the same claim under the same theory' to the state courts before raising it on federal habeas review." *Hicks v. Straub*, 377 F.3d 538, 552–53 (6th Cir. 2004) (quoting *Pillette v. Foltz*, 824 F.2d 494, 497 (6th Cir. 1987)). One of the aspects of "fairly presenting" a claim to the state courts is that a habeas petitioner must do so in a way that gives the state courts a fair opportunity to rule on the federal law claims being asserted. That means that, if the claims are not presented to the state courts in the way in which state law requires, and the state courts therefore do not decide the claims on their merits, neither may a federal court do so. In the words used by the Supreme Court in *Wainwright v. Sykes*, 433 U.S. 72, 87 (1977), "contentions of federal law which were not resolved on the merits in the state proceeding due to respondent's failure to raise them there as required by state procedure" also cannot be resolved on their merits in a federal habeas case-that is, they are "procedurally defaulted."

In the Sixth Circuit, a four-part analysis must be undertaken when the state argues that a federal habeas claim is waived by the petitioner's failure to observe a state procedural rule. *Maupin v. Smith*, 785 F.2d 135, 138 (6th Cir. 1986). "First, the court must determine that there is a state procedural rule that is applicable to the petitioner's claim and that the petitioner failed to comply with the rule." *Id.* Second, the Court must determine whether the state courts actually enforced the state procedural sanction. *Id.* Third, it must be decided whether the state procedural forfeiture is an adequate and independent state ground upon which the state can rely to foreclose review of a federal constitutional claim. *Id.* Finally, if the Court has determined that a state procedural rule was not complied with, and that the rule was an adequate and independent state ground, then the petitioner must demonstrate that there was cause for him not to follow the procedural rule, and that he was actually prejudiced by the alleged constitutional error. *Id.* This

"cause and prejudice" analysis applies to failures to raise or preserve issues for review at the appellate level. *Leroy v. Marshall*, 757 F.2d 94 (6th Cir. 1985).

Turning to the fourth part of the *Maupin* analysis, in order to establish cause, petitioner must show that "some objective factor external to the defense impeded counsel's efforts to comply with the State's procedural rule." *Murray v. Carrier*, 477 U.S. 478, 488 (1986). Constitutionally ineffective counsel may constitute cause sufficient to excuse a procedural default. *Edwards v. Carpenter*, 529 U.S. 446, 453 (2000). In order to constitute cause, an ineffective assistance of counsel claim generally must "'be presented to the state courts as an independent claim before it may be used to establish cause for a procedural default.'" *Edwards,* 529 U.S. at 452 (quoting *Murray*, at 479). That is because, before counsel's ineffectiveness will constitute cause, "that ineffectiveness must itself amount to a violation of the Sixth Amendment, and therefore must be both exhausted and not procedurally defaulted." *Burroughs v. Makowski*, 411 F.3d 665, 668 (6th Cir. 2005). Or, if procedurally defaulted, petitioner must be able to "satisfy the 'cause and prejudice' standard with respect to the ineffective-assistance claim itself." *Edwards,* 529 U.S. at 450-51. The Supreme Court explained the importance of this requirement:

> We recognized the inseparability of the exhaustion rule and the procedural-default doctrine in *Coleman*: "In the absence of the independent and adequate state ground doctrine in federal habeas, habeas petitioners would be able to avoid the exhaustion requirement by defaulting their federal claims in state court. The independent and adequate state ground doctrine ensures that the States' interest in correcting their own mistakes is respected in all federal habeas cases." 501 U.S., at 732, 111 S.Ct. 2546, 115 L.Ed.2d 640. We again considered the interplay between exhaustion and procedural default last Term in *O'Sullivan v.* Boerckel, 526 U.S. 838, 119 S.Ct. 1728, 144 L.Ed.2d 1 (1999), concluding that the latter doctrine was necessary to "'protect the integrity' of the federal exhaustion rule." *Id*., at 848, 526 U.S. 838, 119 S.Ct. 1728, 144 L.Ed.2d 1 (quoting id., at 853, 526 U.S. 838, 119 S.Ct. 1728, 144 L.Ed.2d 1 (STEVENS, J., dissenting)). The purposes of the exhaustion requirement, we said, would be utterly

defeated if the prisoner were able to obtain federal habeas review simply by " 'letting the time run' " so that state remedies were no longer available. *Id.*, at 848, 526 U.S. 838, 119 S.Ct. 1728, 144 L.Ed.2d 1. Those purposes would be no less frustrated were we to allow federal review to a prisoner who had presented his claim to the state court, but in such a manner that the state court could not, consistent with its own procedural rules, have entertained it. In such circumstances, though the prisoner would have "concededly exhausted his state remedies," it could hardly be said that, as comity and federalism require, the State had been given a "fair 'opportunity to pass upon [his claims].'" *Id.*, at 854, 526 U.S. 838, 119 S.Ct. 1728, 144 L.Ed.2d 1 (STEVENS, J., dissenting) (emphasis added) (quoting *Darr v. Burford*, 339 U.S. 200, 204, 70 S.Ct. 587, 94 L.Ed. 761 (1950)).

*Id.* at 452–53.

If, after considering all four factors of the *Maupin* test, a court concludes that a procedural default has occurred, it may not consider the merits of the procedurally defaulted claim unless "review is needed to prevent a fundamental miscarriage of justice, such as when the petitioner submits new evidence showing that a constitutional violation has probably resulted in a conviction of one who is actually innocent." *Hodges v. Colson*, 727 F.3d 517, 530 (6th Cir. 2013) (citing *Murray,* 477 U.S. at 495–96).

In claim six,[1] Petitioner alleges that the evidence was constitutionally insufficient to sustain his convictions. In claim seven, Petitioner alleges that the trial court erred in imposing "mandatory time." In claim eight, Petitioner alleges that he was denied his right to an impartial jury because one of the jurors kept falling asleep during trial. In claim nine, Petitioner alleges that he was denied the effective assistance of trial counsel because his attorney failed to request the seating of an alternate juror or request a mistrial when one of the kept falling asleep during trial. All these claims, being readily apparent from the face of the record, should have been

---

[1] Respondent argues that claim three, in which Petitioner alleges that the State failed to establish a "unifying course of conduct" such that the charges against him were appropriately brought in Delaware County, is likewise procedurally defaulted based on Petitioner's failure to raise this claim on direct appeal. However, the record reflects that Petitioner in fact  raised the same issue on direct appeal. *See State v. Castor*,  2014 WL 6648987, at *1.

raised on direct appeal, where Petitioner was represented by new counsel. However, Petitioner failed to raise any of the foregoing claims on direct appeal. Further, he may now no longer do so by operation of Ohio's doctrine of *res judicata. See State v. Cole*, 2 Ohio St.3d (1982); *State v. Ishmail*, 67 Ohio St.2d 16 (1981); *State v. Perry*, 10 Ohio St.2d 175 (1967) (claims must be raised on direct appeal, if possible, or they will be barred by the doctrine of *res judicata*.). The state courts were never given an opportunity to enforce the procedural rule due to the nature of Petitioner's procedural default.

Moreover, Ohio's doctrine of *res judicata* is adequate and independent under the third part of the *Maupin* test. To be "independent," the procedural rule at issue, as well as the state court's reliance thereon, must rely in no part on federal law. *See Coleman,* 501 U.S. at 732–33. To be "adequate," the state procedural rule must be firmly established and regularly followed by the state courts. *Ford v. Georgia*, 498 U.S. 411 (1991). "[O]nly a 'firmly established and regularly followed state practice' may be interposed by a State to prevent subsequent review by this Court of a federal constitutional claim." *Id*. at 423 (quoting *James v. Kentucky*, 466 U.S. 341, 348–351 (1984)); *see also Barr v. City of Columbia*, 378 U.S. 146, 149 (1964); *NAACP v. Alabama ex rel. Flowers*, 377 U.S. 288, 297 (1964). The United States Court of Appeals for the Sixth Circuit has consistently held that Ohio's doctrine of *res judicata, i.e*., the *Perry* rule, is an adequate ground for denying federal habeas relief. *Lundgren v. Mitchell*, 440 F.3d 754, 765 (6th Cir. 2006*); Coleman v. Mitchell*, 268 F.3d 417, 427–29 (6th Cir. 2001); *Seymour v. Walker*, 224 F.3d 542, 555 (6th Cir. 2000); *Byrd v. Collins*, 209 F.3d 486, 521–22 (6th Cir. 2000); *Norris v. Schotten*, 146 F.3d 314, 332 (6th Cir. 1998).

Ohio courts have consistently refused, in reliance on the doctrine of *res judicata*, to review the merits of claims because they are procedurally barred. *See State v. Cole*, 2 Ohio St.3d

at 112; *State v. Ishmail*, 67 Ohio St.2d at 16. Additionally, the doctrine of *res judicata* serves the state's interest in finality and in ensuring that claims are adjudicated at the earliest possible opportunity. With respect to the independence prong, therefore, this Court concludes that Ohio's doctrine of *res judicata* in this context does not rely on or otherwise implicate federal law. Accordingly, the Court is satisfied from its own review of relevant case law that the *Perry* rule is an adequate and independent ground for denying relief.

Petitioner may still secure review of the merits of these claims if he demonstrates cause for his failure to follow the state procedural rule, as well as actual prejudice from the constitutional violations that he alleges. "[P]etitioner has the burden of showing cause and prejudice to overcome a procedural default." *Hinkle v. Randle*, 271 F.3d 239, 245 (6th Cir. 2001) (citing *Lucas v. O'Dea*, 179 F.3d 412, 418 (6th Cir. 1999) (internal citation omitted)). A petitioner's *pro se* status, ignorance of the law, or ignorance of procedural requirements are insufficient bases to excuse a procedural default. *Bonilla v. Hurley*, 370 F.3d 494, 498 (6th Cir. 2004). Instead, in order to establish cause, a petitioner "must present a substantial reason that is external to himself and cannot be fairly attributed to him." *Hartman v. Bagley*, 492 F.3d 347, 358 (6th Cir. 2007). Petitioner has failed to do so here.

As cause for his procedural default, and in habeas corpus claim five, Petitioner alleges the denial of the effective assistance of appellate counsel. As noted *supra*, such a claim may constitute cause sufficient to excuse a procedural default so long as the claim has been presented to the state courts and is not, itself, procedurally defaulted. *Edwards,* 529 U.S. at 451-52. Here, however, Petitioner procedurally defaulted his claim of denial of the effective assistance of appellate counsel. The state appellate court explicitly denied Petitioner's delayed Rule 26(B) application as untimely, stating:

> [T]his court granted appellant's request for an extension until
> March 24, 2015 to file the application. Appellant filed the
> application on April 10, 2015 without leave of court or stating any
> justifiable reason for the delay. Therefore, the filing is untimely.

*Judgment Entry* (ECF No. 8-1, PageID# 293).[2] Consequently, the first and second parts of the

*Maupin* test have been met with respect to this claim. Further, the Sixth Circuit has recognized

that the timeliness requirement of Ohio Appellate Rule 26(B) is an adequate and independent

state ground for relief. *Fautenberry v. Mitchell*, 515 F.3d 614 (6th Cir. 2008).

Petitioner nonetheless argues that he has established cause for the untimely filing of his

delayed Rule 26(B) application, stating that he did not receive notification of the appellate

court's decision granting his motion for extension of time prior to March 24, 2015, and asserting

that the prison mailroom did not timely mail his Rule 26(B) application. *Traverse* (ECF No. 11,

PageID# 1752). However, "petitioner has the burden of showing cause and prejudice to

overcome a procedural default." *Hinkle,* 271 F.3d at 245 (citing *Lucas,* 179 F.3d at 418 (internal

citation omitted)). Nothing in the record even suggests that Petitioner was prevented from or

could not have submitted his delayed Rule 26(B) application for filing by the date that he himself

had requested. Further, the Ohio Supreme Court has expressly rejected the "mailbox rule" of

*Houston v. Lack*, 487 U.S. 266, 270 (1988)(a *pro se* prisoner's notice of appeal is considered to

be filed under federal law when he submits it to prison officials for mailing), and "[f]ederal

courts are obligated to accept as valid a state court's interpretation of state law and rules of

practice of that state." *Vroman v. Brigano*. 346 F.3d 598, 604 (6th Cir. 2003). Therefore, this

Court will not reconsider the state appellate court's determination that Petitioner failed to

establish good cause for his untimely filing of his Rule 26(B) application.

---

[2] The appellate court also noted that it was without jurisdiction to entertain the application in view of Petitioner's
pending appeal in the Ohio Supreme Court. (ECF No. 8-1, PageID# 293).

Petitioner also argues that the State "invited error" by arguing that the appellate court lacked jurisdiction to consider his Rule 26(B) application, or that it would have been futile for him to timely file the application while his appeal remained pending in the Ohio Supreme Court. Petitioner also contends that the state court's failure to timely notify him of its decision granting his motion for an extension of time to file his delayed Rule 26(B) application constitutes "official interference" which made his compliance with the time limitation impractical. *Traverse* (ECF No. 11, PageID# 1752-53). These arguments are not persuasive. Again, Petitioner does not explain why he did not submit his Rule 26(B) application by the date requested by him – March 24, 2015. Thus, Petitioner has procedurally defaulted his claim of the denial of the effective assistance of appellate counsel and Petitioner has failed to establish cause and prejudice for the procedural default of claim five. In reaching this conclusion, the Court also concludes that petitioner has likewise failed to establish cause for his procedural default in failing to raise claims six through nine on direct appeal.

The United States Supreme Court has held that a claim of actual innocence may also be raised "to avoid a procedural bar to the consideration of the merits of [the petitioner's] constitutional claims." *Schlup v. Delo*, 513 U.S. 298, 326–27 (1995). "[I]n an extraordinary case, where a constitutional violation has probably resulted in the conviction of one who is actually innocent, a federal habeas court may grant the writ even in the absence of a showing of cause for the procedural default." *Murray,* 477 U.S. at 496. In *Schlup,* the Supreme Court held that a credible showing of actual innocence was sufficient to authorize a federal court in reaching the merits of an otherwise procedurally-barred habeas petition. *Schlup*, 513 U.S. at 317. However, the actual innocence claim is "'not itself a constitutional claim, but instead a gateway

through which a habeas petitioner must pass to have his otherwise barred constitutional claim considered on the merits.'" *Id*. at 315 (quoting *Herrera v. Collins*, 506 U.S. 390, 404 (1993)).

The actual innocence exception allows a petitioner to pursue his constitutional claims if it is "more likely than not" that new evidence—not previously presented at trial—would allow no reasonable juror to find him guilty beyond a reasonable doubt. *Souter v. Jones*, 395 F.3d 577 (6th Cir. 2005). The Court of Appeals for the Sixth Circuit explained the exception as follows:

> The United States Supreme Court has held that if a habeas petitioner "presents evidence of innocence so strong that a court cannot have confidence in the outcome of the trial unless the court is also satisfied that the trial was free of nonharmless constitutional error, the petitioner should be allowed to pass through the gateway and argue the merits of his underlying claims." *Schlup*, 513 U.S. at 316, 115 S.Ct. 851, 130 L.Ed.2d 808. Thus, the threshold inquiry is whether "new facts raise[ ] sufficient doubt about [the petitioner's] guilt to undermine confidence in the result of the trial." *Id*. at 317, 513 U.S. 298, 115 S.Ct. 851, 130 L.Ed.2d 808. To establish actual innocence, "a petitioner must show that it is more likely than not that no reasonable juror would have found petitioner guilty beyond a reasonable doubt." *Id*. at 327, 513 U.S. 298, 115 S.Ct. 851, 130 L.Ed.2d 808. The Court has noted that "actual innocence means factual innocence, not mere legal insufficiency." *Bousley v. United States,* 523 U.S. 614, 623, 118 S.Ct. 1604, 140 L.Ed.2d 828 (1998). "To be credible, such a claim requires petitioner to support his allegations of constitutional error with new reliable evidence— whether it be exculpatory scientific evidence, trustworthy eyewitness accounts, or critical physical evidence—that was not presented at trial." *Schlup*, 513 U.S. at 324, 115 S.Ct. 851, 130 L.Ed.2d 808. The Court counseled however, that the actual innocence exception should "remain rare" and "only be applied in the 'extraordinary case.'" *Id.* at 321, 513 U.S. 298, 115 S.Ct. 851, 130 L.Ed.2d 808.

*Souter,* 395 F.3d at 589–90 (footnote omitted).  Petitioner does not meet these standards here. After an independent review of the record, the Court does not deem this to be so extraordinary a case as to relieve petitioner of his procedural default.

Petitioner has waived this Court's review of the merits of claims five, six, seven, eight and nine.

## Merits

### Standard of Review

Because Petitioner seeks habeas relief under 28 U.S.C. § 2254, the standards of the Antiterrorism and Effective Death Penalty Act ("the AEDPA") govern this case. The United State Supreme Court has described the AEDPA as "a formidable barrier to federal habeas relief for prisoners whose claims have been adjudicated in state court" and has emphasized that courts must not "lightly conclude that a State's criminal justice system has experienced the 'extreme malfunction' for which federal habeas relief is the remedy." *Burt v. Titlow*,—U.S.—, 134 S. Ct. 10, 16 (2013) (quoting *Harrington v. Richter*, 562 U.S. 86 (2011)); *see also Renico v. Lett*, 559 U.S. 766, 773 (2010) ("AEDPA . . . imposes a highly deferential standard for evaluating state-court rulings, and demands that state court decisions be given the benefit of the doubt.") (internal quotation marks, citations, and footnote omitted).

The AEDPA limits the authority of a federal court to issue a writ of habeas corpus with respect to a "claim that was adjudicated on the merits in State court proceedings" unless the state court decision either:

> (1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or

> (2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.

28 U.S.C. § 2254(d). Further, under the AEDPA, the factual findings of the state court are presumed to be correct:

In a proceeding instituted by an application for a writ of habeas corpus by a person in custody pursuant to the judgment of a State court, a determination of a factual issue made by a State court shall be presumed to be correct. The applicant shall have the burden of rebutting the presumption of correctness by clear and convincing evidence.

28 U.S.C. § 2254(e)(1). Accordingly, "a writ of habeas corpus should be denied unless the state court decision was contrary to, or involved an unreasonable application of, clearly established federal law as determined by the Supreme Court, or based on an unreasonable determination of the facts in light of the evidence presented to the state courts." *Coley v. Bagley*, 706 F.3d 741, 748 (6th Cir. 2013) (citing *Slagle v. Bagley*, 457 F.3d 501, 513 (6th Cir. 2006)). The United States Court of Appeals for the Sixth Circuit explained these standards as follows:

A state court's decision is "contrary to" Supreme Court precedent if (1) "the state court arrives at a conclusion opposite to that reached by [the Supreme] Court on a question of law[,]" or (2) "the state court confronts facts that are materially indistinguishable from a relevant Supreme Court precedent and arrives" at a different result. *Williams v. Taylor*, 529 U.S. 362, 405, 120 S.Ct. 1495, 146 L.Ed.2d 389 (2000). A state court's decision is an "unreasonable application" under 28 U.S.C. § 2254(d)(1) if it "identifies the correct governing legal rule from [the Supreme] Court's cases but unreasonably applies it to the facts of the particular . . . case" or either unreasonably extends or unreasonably refuses to extend a legal principle from Supreme Court precedent to a new context. *Id.* at 407, 529 U.S. 362, 120 S.Ct. 1495, 146 L.Ed.2d 389.

*Coley*, 706 F.3d at 748–49. The burden of satisfying AEDPA's standards rests with the petitioner. *See Cullen v. Pinholster*, 563 U.S.170, 181 (2011).

### Claim One

In claim one, Petitioner alleges that he was denied his "right to proper venue" because the State tried him in Delaware County on charges that were alleged to have occurred in Franklin

County. *Petition* (ECF No. 3, PageID# 25). However, this claim does not provide a basis for federal habeas corpus relief.

> While the "vicinage" clause of the Sixth Amendment to the United States Constitution guarantees the right to be tried by a jury of the district in which the crime has been committed, this right only applies to federal criminal trials and the Fourteenth Amendment did not extend the vicinage clause to state criminal trials. *Caudill v. Scott,* 857 F.2d 344, 345–46 (6th Cir.1988); *accord Stevenson v. Lewis,* 384 F.3d 1069, 1071 (9th Cir.2004). Even in a federal criminal trial, failure to establish venue is not grounds for federal habeas relief, because, "in the absence of any allegation of bad faith on the part of the Government or prejudice to the defendant, improper venue will not ordinarily result in a 'miscarriage of justice,' and presents no extraordinary need for post-conviction relief." *Williams,* 582 F.2d at 1042.

*Wilson v. Berghuis*, No. 09-14787, 2013 WL 757023, at *5 (E.D. Mich. Feb. 28, 2013)(citing *Williams v. United States*, 582 F.2d 1039, 1041 (6th Cir. 1978)(claim of improper venue not cognizable in habeas corpus review)).

Claim one is without merit.

## Claim Two

In claim two, Petitioner alleges that he was denied the effective assistance of trial counsel because his attorney failed to challenge the constitutionality of O.R.C. § 2901.12(H), Ohio's venue statute. The state appellate court rejected this claim in relevant part as follows:

> R.C. 2901.12 governs venue. Subsection (H) states the following:
>
> (H) When an offender, as part of a course of criminal conduct, commits offenses in different jurisdictions, the offender may be tried for all of those offenses in any jurisdiction in which one of those offenses or any element of one of those offenses occurred. Without limitation on the evidence that may be used to establish the course of criminal conduct, any of the following is *prima-facie* evidence of a course of criminal conduct:
>
> (1) The offenses involved the same victim, or victims of the same type or from the same group.

15

(2) The offenses were committed by the offender in the offender's same employment, or capacity, or relationship to another.

(3) The offenses were committed as part of the same transaction or chain of events, or in furtherance of the same purpose or objective.

(4) The offenses were committed in furtherance of the same conspiracy.

(5) The offenses involved the same or a similar modus operandi.

(6) The offenses were committed along the offender's line of travel in this state, regardless of the offender's point of origin or destination.

\*\*\*

Appellant claims his trial counsel was ineffective for not making a constitutional challenge to R.C. 2901.12(H).

The standard this issue must be measured against is set out in *State v. Bradley,* 42 Ohio St.3d 136 (1989), paragraphs two and three of the syllabus. Appellant must establish the following:

2. Counsel's performance will not be deemed ineffective unless and until counsel's performance is proved to have fallen below an objective standard of reasonable representation and, in addition, prejudice arises from counsel's performance. (*State v. Lytle* [1976], 48 Ohio St.2d 391, 2 O.O.3d 495, 358 N.E.2d 623; *Strickland v. Washington* [1984], 466 U.S. 668, 104 S.Ct. 2052, 80 L.Ed.2d 674, followed.)

3. To show that a defendant has been prejudiced by counsel's deficient performance, the defendant must prove that there exists a reasonable probability that, were it not for counsel's errors, the result of the trial would have been different.

As the Supreme Court of Ohio explained in *State v. Draggo*, 65 Ohio St.2d 88, 90–91 (1981), in reviewing former R.C. 2901.12(G) and (H), the statutes embrace the mobility of our society:

> Venue is not a material element of any offense charged. The elements of the offense charged and the venue of the matter are separate and distinct. *State v. Loucks* (1971), 28 Ohio App.2d 77, 274 N.E.2d 773, and *Carbo v. United States* (C.A.9, 1963), 314 F.2d 718. Yet, in all criminal

prosecutions, venue is a fact that must be proved at trial unless waived. *State v. Nevius* (1947), 147 Ohio St. 263, 71 N.E.2d 258.

R.C. 2901.12(G) and (H) are statutory reflections of the modern mobility of criminals to perform unlawful deeds over vast geographical boundaries. The above-noted statutory provisions effectuate a sensible, efficient approach to justice by permitting one court to hear a matter which has roots in several court jurisdictions.

Dissection of the relevant provisions, namely R.C. 2901.12(A) and (H) and, more specifically, (G), explicitly denotes that venue is proper if " * * * (the) offense or any element" was committed in the court's jurisdiction.

Since 1988, the Ohio General Assembly expanded the types of criminal cases that could be tried intra-jurisdictional[ly]. It is uncontested that the first thirty-one counts of the indictment occurred in Franklin County and the remaining eleven counts occurred in Delaware County. At the conclusion of the state's case-in-chief, defense counsel made a Crim.R. 29 motion for acquittal and strenuously objected to venue and a course of criminal conduct for the counts that occurred in Franklin County. T. at 1006–1048. Although defense counsel did not specifically attack venue as to the constitutionality of R.C. 2901.12(H), he articulated the lack of proof of a course of criminal conduct, emphasizing R.C. 2901.12(H)(1), (4), and (5). In response to the motion, the prosecutor outlined the following (T. at 1009–1010):

Count One did occur in Franklin County. However, it does show some of the same characteristics that we were talking about in the other incidences, something repeated three separate ways. We have shown a course of criminal conduct.

First being the offense involved the victim, same type of the same group, being apartment tenants.

Secondly, the offense was committed as a part of the same transaction or chain of events or in furtherance of the same pure objective; all of the counts occurred over a period of time, ten different dates, all occurred within a three months' time period of each other.

There's no large gap here. In fact, the last one in Franklin County is August 2nd, first one we have in Delaware County is August 7th, which is five days later, they all, again, all of the burglaries in the apartment complexes. Additionally, these occurred at the same times, and the same general items were taken in each case: TV's; laptops; video game systems, jewelry, all of these items that are resale pawn value, they are not stealing items that can't be pawned for money. We believe the evidence has shown all the same chain of events, all committed for the same purpose or objective.

Finally, and probably most importantly, is the offense involves the same or similar modus operandi, it does not single one of the burglary counts that occurred in a home [sic]; every time it was in an apartment; every time it was in an apartment complex with multiple units; every single time it was in the daytime; and I believe all but one case there was force used to a door to gain entry; there's not a situation where windows were smashed or a glass door smashed to gain entry. Also, all of them we'll see pry bar marks.

Many times an individual was observed with a clipboard in the area beforehand. We have the same types of vans that are used in all of the offenses, and in the numerous times indicated. The witnesses see a van being present, and Mr. Castor did generally in both cases get into this type of vehicle.

At the time of the trial, the case of *State v. DeBoe*, 6th Dist. Huron No. H02–057, 2004–Ohio–403 was unchallenged. In *DeBoe* at ¶ 37–38, our brethren from the Sixth District specifically addressed the constitutionality of R.C. 2901.12(H) as follows:

For a statute to be declared unconstitutional, "it must appear beyond a reasonable doubt that the legislation and constitutional provisions are clearly incompatible." *State ex rel. Dickman v. Defenbacher* (1955), 164 Ohio St. 142, 128 N.E.2d 59, paragraph one of the syllabus. *Accord State v. Thompkins* (1996), 75 Ohio St.3d 558, 560, 664 N.E.2d 926. "Further, doubts regarding the validity of a legislative enactment are to be resolved in favor of the statute." *State v. Gill* (1992), 63 Ohio St.3d 53, 55, 584 N.E.2d 1200, citing *State ex rel. Swetland v. Kinney* (1982), 69 Ohio St.2d 567, 433 N.E.2d 217.

The Ohio Constitution guarantees to its citizens, "a speedy trial by an impartial jury of the county in which the offense is alleged to have been committed * * *." Section 10, Article 1, Ohio Constitution. The primary purpose of this constitutional provision is to fix the place of trial. *State v. Fendrick* (1907), 77 Ohio St. 298, 300, 82 N.E. 1078. This constitutional principle was embodied by the legislature in R.C. 2901.12, which provides that, "the trial of a criminal case in this state shall be held in a court having jurisdiction of the subject matter, and in the territory of which the offense or any element of the offense was committed." The statutory "any element" rule was approved by the Ohio Supreme Court in *State v. Draggo* (1981), 65 Ohio St.2d 88, 418 N.E.2d 1343. R.C. 2901.12 merely provides the criteria for which territory an offender may be tried for multiple offenses which involve different jurisdictions or venues. Since R.C. 2901.12 does not deprive an offender of his right to a properly venued jury trial, it is not incompatible with the Ohio Constitution. Therefore, R.C. 2901.12 is not unconstitutional.

Appellant argues two cases that support his attack on the constitutionality of R.C. 2901.12(H), *State v. Chalikes*, 122 Ohio St. 35 (1930) and *State v. Nevius*, 147 Ohio St. 263 (1947). These cases were decided long before the Modern Courts Amendment (1968) and R.C. 2901.12 were enacted. These cases challenged venue on a single count, not a series of criminal acts linked together via similarity of victim and modus operandi, and in furtherance of the same criminal conspiracy. Therefore, we find the cases to be inapplicable *sub judice*.

Using the two-prong test of *Bradley* and *Strickland,* we find defense counsel properly articulated the venue issue to the trial court, and do not find any deficiency in his performance.

*State v. Castor*, 2014 WL 6648987, at *1-4.

"In all criminal prosecutions," the Sixth Amendment affords "the accused. . . the right. . . to Assistance of Counsel for his defence." U.S. Const. amend. VI. "Only a right to 'effective assistance of counsel' serves the guarantee." *Couch v. Booker*, 632 F.3d 241, 245 (6th Cir. 2011) (citation omitted). The United States Supreme Court set forth the legal principles governing

claims of ineffective assistance of counsel in *Strickland v. Washington*, 466 U.S. 556 (1984). *Strickland* requires a petitioner claiming ineffective assistance of counsel to demonstrate that his counsel's performance was deficient and that he suffered prejudice as a result. *Id.* at 687; *Hale v. Davis*, 512 Fed.Appx. 516, 520 (6th Cir. 2013). A petitioner "show[s] deficient performance by counsel by demonstrating 'that counsel's representation fell below an objective standard of reasonableness.'" *Poole v. MacLaren*, 547 F.Appx. 749, 754 (6th Cir. 2013) (quoting *Davis v. Lafler*, 658 F.3d 525, 536 (6th Cir. 2011) (internal quotation marks omitted) and citing *Strickland*, 466 U.S. at 687). To make such a showing, a petitioner "must overcome the presumption that, under the circumstances, the challenged action 'might be considered sound trial strategy.'" *Strickland*, 466 U.S. at 689 (quoting *Michel v. Louisiana*, 350 U.S. 91, 101 (1955)). *See also Bigelow v. Haviland*, 576 F.3d 284, 287 (6th Cir. 2009) (quoting *Strickland*, 466 U.S. at 689).

Petitioner argues that the state appellate court, in concluding that O.R.C. § 2901.12(H) did not violate the Ohio Constitution, contravened the Ohio Supreme Court's decision in *State v. Chalikes*, 122 Ohio St. 35 (1930). *Traverse* (ECF No. 11, PageID# 1757-58). He also argues that the state appellate court misconstrued *State v. Draggo*, 65 Ohio St.2d 88 (1981). Finally, Petitioner claims that he was prejudiced by his trial counsel's failure to raise the issue, as evidenced by the state appellate court's refusal to address the merits of the issue on direct appeal.[3]

---

[3] The state appellate court in fact refused to address the merits of Petitioner's challenge to the constitutionality of O.R.C. § 2901.12(H) because of his attorney's failure to raise the issue at trial:

> We note this constitutional argument was not made to the trial court. "'An appellate court will not consider any error, including constitutional error, which counsel for a complaining party could have, but failed to call to the trial court's attention at a time when such error could have been avoided by the trial court .' *In re 730 Chickens* (1991), 75 Ohio App.3d 476, 488, 599 N.E.2d 828, citing, *State v.1981 Dodge Ram Van* (1988), 36 Ohio St.3d 168, 170, 522 N.E.2d 524." *In re*

In *State v. Draggo*, 65 Ohio St.2d at 90, the Ohio Supreme Court stated:

> R.C. 2901.12(G) and (H) are statutory reflections of the modern mobility of criminals to perform unlawful deeds over vast geographical boundaries. The. . . statutory provisions effectuate a sensible, efficient approach to justice by permitting one court to hear a matter which has roots in several court jurisdictions.

*Id*. Moreover, and despite Petitioner's argument to the contrary, Ohio courts have repeatedly approved the application of § 2901.12(H) in addressing the issue of venue in criminal cases. *See, e.g., State v. Beuke*, 38 Ohio St.3d 29, 41 (1988); *State v. Jackson*, 141 Ohio St.3d 171, 198 (2014); *State v. Hackworth*, 80 Ohio App.3d 362, 366 (Ohio App. 6th Dist. May 29, 1992); *State v. Giffin*, 62 Ohio App.3d 396, 399 (Ohio App. 10th Dist. April 11, 1991). In any event, this Court must defer to the state's interpretation of its own laws. *See Calhoun v. Tibbals,* No. 2:15-cv-03026, 2017 WL 914737, at *9 (S.D. Ohio March 8, 2017)*(citing Machin v. Wainwright,* 758 F.2d 1431, 1433 (11th Cir. 1985); *Beavers v. Franklin County Adult Probation,* No. 2:13-cv-00404, 2016 WL 5660275, at *1 (S.D. Ohio Sept. 29, 2016)(citation omitted). Because Ohio courts have consistently affirmed the constitutionality of the Ohio statute challenged by Petitioner, Petitioner cannot establish the denial of the effective assistance of counsel under the two-prong *Strickland* test based on his attorney's failure to raise the issue.

Claim two is without merit.

## Claim Three

In claim three, Petitioner alleges that the State failed to present evidence of a unifying course of conduct sufficient to try Counts One through Thirty-One in Delaware County, as is

---

*Retaining Vorys, Sater, Seymour & Pease, L.L.P., as Special Counsel*, 192 Ohio App.3d 357, 2011–Ohio–640, ¶ 24.

Because the constitutionality of the statute was not raised at the trial level, we deny Assignment of Error I.

*State v. Castor*, 2014 WL 6648987, at *2.

required by O.R.C. § 2901.12(H). The state appellate court rejected this claim in relevant part as

follows:

> Appellant claims R.C. 2901.12(H) does not apply to the first thirty-one counts because the evidence failed to show a unifying course of criminal conduct as required in the statute. We disagree.
>
> The evidence establishes certain factors that are applicable to R.C. 2901.12(H)(1), (4), and (5) to determine a course of criminal conduct including the same type of victim (dwellers of apartment complexes), same or similar modus operandi (daytime, pry bar use, maintenance person disguise, minivan, similar objects stolen), and "furtherance of the same conspiracy." T. at 88–92, 99, 101–103, 128, 130–132, 152, 168, 170–172, 182–183, 210–212, 217, 222, 225, 229–230, 234, 237–239, 246, 248–249, 257–260, 262, 264–265, 272–273, 331–332, 342, 347–349, 355, 357–358, 440, 444, 450, 453–454, 466, 474, 476, 530, 533, 547–548, 566–570, 610, 720, 722, 726, 731, 743–745, 753, 764, 772, 774–777, 804, 809–810, 827, 833, 835, 865.
>
> The indictment set forth a time frame of the offenses from May 24, 2013 to August 21, 2013, beginning in Franklin County and terminating in Delaware County. The forty-two count indictment included burglaries, an attempted burglary, a theft, possession of criminal tools, and receiving stolen property. The burglaries and thefts were from apartments broken into with a pry bar during the daylight, working hours (with the exception of one), when the victims were unlikely to be home. With the exception of two apartments, all were cluster apartments in complexes and numerous apartments were entered into in each complex. The counts did not include a single home.
>
> Of note, all of the Franklin County addresses, except for the Canal Winchester address, are within the immediate proximity of the northwest loop of I–270.
>
> The types of property taken were televisions, laptops, video game systems, electronic equipment, guitars, blankets, and jewelry. T. at 91–92, 103, 132, 172, 217, 229–230, 239, 249, 265, 342, 355, 357–358, 450, 453–454, 474, 476, 533, 731, 753, 775–776, 809–810. At the first burglary, a silver Chevy Venture minivan was stolen. T. at 103, 106. Witnesses identified the same type of minivan at other burglaries. T. at 152, 183, 262, 272, 347, 827. A clipboard was also stolen, seen at subsequent burglaries and ultimately recovered during appellant's arrest. T. at 132, 259–260, 273, 348, 610, 764,

865, 942–943. A partial license plate number on the minivan was identified and later the same plate, as well as other license plates, were recovered during appellant's arrest. T. at 946–947. Items that appellant used in disguising himself were also recovered during his arrest (red hat, pry bar, bucket of tools, clipboard). T. at 578–583, 927–928, 930–932, 942–947. Appellant's DNA was identified on the red hat. T. at 647–648, 651–653. Appellant had pawned many of the stolen items. T. at 388–396.

All of these similarities do not imply simple coincidences, but a definitive pattern of burglaries by the same individual. The ultimate connections were the items seized in the minivan during appellant's arrest. These items were specifically identified by witnesses who observed appellant and/or the minivan at the scene of various burglaries (North High Street Apartments, Sanctuary Village, North Star Avenue Apartments).

We find the facts were sufficient for prosecution of the Franklin County offenses in Delaware County under R.C. 2901.12(H).

*State v. Castor*, 2014 WL 6648987, at **5. Petitioner argues that the state appellate court's decision was unreasonable. *Traverse* (ECF No. 11, PageID# 1759-60). However, Petitioner's claim, again, involves the state court's interpretation of state law. Such a claim does not provide a basis for federal habeas corpus relief.

This Court may review a state prisoner's habeas petition only on the ground that the challenged confinement violates the Constitution, laws or treaties of the United States, and not "on the basis of a perceived error of state law." 28 U.S.C. § 2254(a); *Pulley v. Harris*, 465 U.S. 37, 41 (1984); *see also Estelle v. McGuire*, 502 U.S. 62, 67-68 (1991)("[I]t is not the province of a federal court to reexamine state-court determinations on state-law questions.") Moreover, as noted *supra*, this Court must defer to a state court's determination of its own laws.

Claim three does not warrant relief.

**Claim Four**

In claim four, Petitioner alleges that he was denied a fair trial because the identification at trial by witness Stephany Bevan of Petitioner as the perpetrator was based on an impermissibly suggestive photo array presented to her prior to trial. Petitioner specifically complains that police improperly used a photo array that contained photographs of five Hispanic males and of Petitioner, the only non-Hispanic person whose photograph was shown. *Traverse* (ECF No. 11, PageID# 1762). The state appellate court rejected this claim, reasoning as follows:

> Appellant claims the trial court erred in permitting identification testimony derived from an impermissibly suggestive photographic lineup. We disagree.
>
> In *State v. Wills*, 120 Ohio App.3d 320, 325 (8th Dist.1997), our brethren from the Eighth District explained the following:
>
> When deciding motions to suppress photographic identification procedures, the courts must determine whether the photos or procedures used were "so impermissibly suggestive as to give rise to a very substantial likelihood of irreparable misidentification." *Simmons v. United States* (1968), 390 U.S. 377, 384, 88 S.Ct. 967, 971, 19 L.Ed.2d 1247, 1253. Suggestiveness depends on several factors, including the size of the array, its manner of presentation, and its contents. *Reese v. Fulcomer* (C.A.3, 1991), 946 F.2d 247, 260. Stated otherwise, the test is "whether the picture of the accused, matching descriptions given by the witness, so stood out from all of the photographs as to suggest to an identifying witness that [that person] was more likely to be the culprit." *Jarrett v. Headley* (C.A.2, 1986), 802 F.2d 34, 41.
>
> We note appellant never filed a motion to suppress. On the fifth day of trial, defense counsel moved for a mistrial and to dismiss the indictment based upon an improperly created photo lineup (State's Exhibit 41). Despite the lack of a motion to suppress, the trial court entertained the issue, ruling as follows in a judgment entry filed November 19, 2013:
>
> > The Court specifically finds that the State did not violate the terms of § 2933.83.

The Court must now turn to the case law. In considering the case law, the Court finds the "photo array" complained of was not "unusually suggestive." The Court finds the features of the Defendant are greatly similar to the other individuals whose pictures were used. *State v. Hudson*, 2009 WL 252362 and *State v. Gloss,* 2010 WL 3377784. The fact that all five of the other photos were Hispanic does not mean that the others did not have features similar to the Defendant. Furthermore, the photo line-up included men that fit within the general description given by the witness. *State v. Gomez*, 2005 WL 742702.

The Court does not find the photo array to be suggestive. The Defendant's motion is therefore Overruled.

The testimony concerning the identification of appellant using the photo array occurred during the second day of trial. Stephany Bevan testified she immediately identified photograph number three as the perpetrator because of his eyes. T. at 281282. She did not know if the photograph was of a Hispanic, but the eyes were the determining factor. T. at 285.

Columbus Police Detective Richard Moore testified to showing the blind photo array to Ms. Bevan. T. at 291. Detective Moore was not responsible for the make-up of the array so as not to show any favoritism to the suspect. T. at 289–290.

Columbus Police Detective Kevin Grooms made up the photo array after appellant was already a suspect (State's Exhibit 177). T. at 626. He used the most recent photograph of appellant. T. at 626–627. In setting up the photo array, Detective Grooms used identifying characteristics to match other photographs to the suspect's. T. at 627–628. He used "[m]ale, Hispanic, age range." T. at 628. He entered Hispanic because appellant reminded him of a military friend who was Hispanic and his name was of Hispanic origin. Id. Both the photo array and the number three photograph identified by Ms. Bevan were marked and received as State's Exhibits 41 and 177 without objection.

Given the testimony of Ms. Bevan and Detective Grooms and the exhibits themselves, we find the photo array was not impermissibly suggestive and did not cause appellant to stand out from the others.

*State v. Castor*, 2014 WL 6648987, at **6-7.

Due process prohibits identification testimony based upon a pre-trial procedure that is so "impermissibly suggestive as to give rise to a very substantial likelihood of irreparable misidentification." *Thigpen v. Cory*, 804 F.2d 893, 895 (6th Cir. 1986) (quoting *Simmons v. United States*, 390 U.S. 377, 384 (1968)); *see also Stovall v. Denno*, 388 U.S. 293 (1967). "It is the likelihood of misidentification which violates a defendant's right to due process." *Neil v. Biggers,* 409 U.S. 188, 198 (1972). In resolving a claim of improper pre-trial identification procedures, a court must first determine whether the procedures employed were unduly suggestive. *Ledbetter v. Edwards*, 35 F.3d 1062, 1070–71 (6th Cir. 1994). If so, the court must then consider the totality of the circumstances in order to determine if the identification is nevertheless reliable. *Id.* at 1070 (citing *United States v. Hill*, 967 F.2d 226, 230 (6th Cir. 1992)). *See also Neil v. Biggers*, 409 U.S. at 199–200; *Thigpen v. Cory*, 804 F.2d at 895. In making this determination, the court must consider the following five factors:

> (1) the opportunity of the witness to view the criminal at the time of the crime; (2) the witness's degree of attention at the time of observation; (3) the accuracy of the witness's prior description of the criminal; (4) the level of certainty demonstrated by the witness when confronting the defendant; and (5) the length of time between the crime and the confrontation.

*Ledbetter,* 35 F.3d at 1070 (citing *Manson v. Brathwaite*, 432 U.S. 98, 114 (1977); *Neil v. Biggers*, 409 U.S. at 199–200)).

Stephany Bevan testified at Petitioner's trial that, on June 25, 2013, she was visiting her mother at 132 Sanctuary Village Drive. *Transcript* (ECF No. 8-3, PageID# 632). At approximately 11:25 a.m., they decided to go to the Giant Eagle grocery store. *Id.* (PageID# 633). She noticed a tannish-gray minvan parked with a man sitting inside. *Id.* (PageID# 634). The man was holding a silver clipboard, and she thought that he was there to make an estimate

for the power wash of the breezeway of the building.  *Id.* (PageID# 635).  They looked at each other.  *Id.* (PageID# 635).  They made eye contact.  *Id.* (PageID# 644).

> It was just a second.  He looked up from the clipboard, I looked at him, I looked at my mom, he looked at me and my mom, and I said do you think I should lock my car doors, she said we'll just be gone a few minutes.

*Id.* (PageID# 648). He had short buzzed hair, dark brown eyes, and what looked like a maintenance type gray short sleeved shirt. *Id.* (PageID# 636).  When Ms. Bevan and her mother returned, they found that her mother's home had been robbed.  *Id.* (PageID# 637).  On September 12, 2013, detectives came to her workplace. *Id.* (PageID# 640).  She was immediately able to identify Petitioner's photograph as the individual she had seen on the day that her mother's house had been broken into.  *Id.* (PageID# 644).  "I knew the eyes. . . . That's it.  I mean, there was no guessing, second guessing, that was it. . . . I just knew." *Id.* (PageID# 644).

Petitioner argues that the state court was unreasonable in its finding that Petitioner's features and the features of all of the other individuals included in the photo array were similar in appearance.  *Traverse* (ECF No. 11, PageID# 1763-64).  However, the Court has reviewed the photocopy of the photo array used by police during the course of the pre-trial identification procedures that resulted in the identification of Petitioner as the perpetrator.  Exhibit attached to *Appellant's Brief* (ECF No. 8-1, PageID# 172).  Upon its own review of that document, the Court is not persuaded that the photo array was unduly suggestive so as to warrant disregarding the state court's finding of fact and granting federal habeas corpus relief.  The record simply does not support Petitioner's assertion that his photograph stands out from the photographs of the five other men depicted in the photo array.  Further, nothing in the record indicates that police acted improperly or suggested to Stephany Bevan which photograph she should choose when obtaining Petitioner's identification as the perpetrator.

Claim four is without merit.

## Recommended Disposition

Therefore, the Magistrate Judge **RECOMMENDS** that this action be **DISMISSED.**

## Procedure on Objections

If any party objects to this *Report and Recommendation*, that party may, within fourteen days of the date of this Report, file and serve on all parties written objections to those specific proposed findings or recommendations to which objection is made, together with supporting authority for the objection(s). A judge of this Court shall make a *de novo* determination of those portions of the report or specified proposed findings or recommendations to which objection is made. Upon proper objections, a judge of this Court may accept, reject, or modify, in whole or in part, the findings or recommendations made herein, may receive further evidence or may recommit this matter to the magistrate judge with instructions. 28 U.S.C. 636(B)(1).

The parties are specifically advised that failure to object to the *Report and Recommendation* will result in a waiver of the right to have the district judge review the *Report and Recommendation de novo,* and also operates as a waiver of the right to appeal the decision of the District Court adopting the *Report and Recommendation. See Thomas v. Arn,* 474 U.S. 140 (1985); *United States v. Walters,* 638 F.2d 947 (6th Cir. 1981).

The parties are further advised that, if they intend to file an appeal of any adverse decision, they may submit arguments in any objections filed, regarding whether a certificate of appealability should issue.

                                                          *  s/Norah McCann King*
                                                          Norah McCann King
                                                          United States Magistrate Judge

April 13, 2017